## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FERNANDO LECUONA, III, Commissioner of the Department of Labor, and NEBRASKA WORKFORCE DEVELOPMENT - DEPARTMENT OF LABOR, | ) ) ) ) ) | CASE NO. 8:06CV602 BK 04-84228 ADV 06-8101 |
| Appellant, | ) ) | |
| v. | ) ) | |
| FLORENCE ROMONA McCLINTON, | ) ) | MEMORANDUM AND ORDER |
| Appellee, | ) ) | |
| -------------------------------------------------------- | ) ) | |
| IN RE: | ) ) | |
| FLORENCE ROMONA McCLINTON, | ) ) | |
| Debtor, | ) | |

This matter is before the Court on appeal from the Order and Memorandum Opinion issued on August 29, 2006 by the United States Bankruptcy Court for the District of Nebraska (hereafter the "bankruptcy court"). The Debtor, Florence Romona McClinton, filed a motion to reopen her Chapter 7 bankruptcy case, which the bankruptcy court granted over objection filed by the Nebraska Workforce Development - Department of Labor ("NWD-DOL"). The NWD-DOL has filed this appeal to challenge the bankruptcy court's disposition of its objection to the reopening of the case, and it has elected to have the appeal heard by the district court. The Court has decided to exercise jurisdiction over this interlocutory appeal. (Filing No. 7). The matter has been fully briefed. (Filing Nos. 8, 9, and 10).

**Standard of Review**

A district court reviews the findings of fact of a bankruptcy court for clear error and the conclusions of law *de novo.* Fed. R. Bankr. P. 8013; *In re Vote*, 276 F.3d 1024, 1026 (8th Cir. 2002)(acknowledging that the court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo). "Whether property is included in the bankruptcy estate is a question of law." *In re Cent. Ark. Broad.,* 68 F.3d 213, 214 (8th Cir.1995) (citing *In re Da-Sota Elevator Co.,* 939 F.2d 654, 654-55 (8th Cir.1991)).

**Factual Background**

In the reopened bankruptcy case, McClinton alleges that the NWD-DOL violated the discharge injunction by unlawfully reducing her post-discharge unemployment benefits by $90. It is undisputed that the $90 represents the amount that McClinton still owed to the NWD-DOL for an overpayment of unemployment benefits that was made to her in 2004 before she filed her Chapter 7 petition. The amount of the overpayment made to McClinton was $133, but she had repaid $43 before she filed her petition. McClinton argues that the NWD-DOL had no right to recoupment of the overpayment from unemployment benefit payments made to her after the discharge of her debts by the bankruptcy court. The bankruptcy court denied the NWD-DOL's objection to the motion, concluding that McClinton should be permitted to reopen the bankruptcy case to "allow the debtor to obtain a judgment in her favor and against the NWD-DOL, and preserve the integrity of the bankruptcy discharge." (Filing No. 2, p. 3).

NWD-DOL appeals the bankruptcy court's decision to reopen the case. NWD-DOL argues that it is legally entitled to recoupment of the overpayment that it made to McClinton in 2004 from unemployment benefits made to her in 2006, without regard to the Bankruptcy

2

Code's automatic stay or discharge injunction provisions.  The NWD-DOL argues that it is entitled to equitable recoupment because 1) the payment of unemployment benefits pre and post petition should be characterized as a single transaction; 2) unemployment benefit recipients such as Mc Clinton have no property right in the benefits, and, therefore, overpayments never become part of the bankrupt's estate; and 3) McClinton was at fault in receiving overpayments and her actions must be distinguished from debtors who are not at fault.  The NWD-DOL also contends that it was error for the bankruptcy court to require it to commence an adversary complaint in order to assert its alleged right to recoupment.

**Analysis**

Equitable recoupment is a common law doctrine that operates outside the Bankruptcy Code and is preserved through judicial decision.  The bankruptcy trustee takes property subject to rights of recoupment.  The United State Court of Appeals for the Eighth Circuit has not addressed the precise issue presented in this case: whether an overpayment of unemployment compensation benefits made by the NWD-DOL that was made prior to the filing of a petition in bankruptcy, may be recouped from unemployment compensation benefits paid to the debtor after the discharge.  However, with regard to recoupment generally, the Eighth Circuit Court has stated:

> In the bankruptcy setting, permitting a creditor to recoup a pre-petition claim by reducing its obligation to pay for a bankrupt's post-petition services raises serious concerns:
>
>> A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a "cleavage" in time. Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions. . . . Any recoupment exception to this general principle perhaps **should be narrowly construed.**

3

> *In re B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir. 1986) (citations omitted).
> To prevent a bankrupt's creditors from using recoupment to gain
> unwarranted preferences, **courts require that "the creditor . . . have a
> claim against the debtor that arises from the same transaction as the
> debtor's claim against the creditor."** *In re NWFX, Inc.*, 864 F.2d 593, 597
> (8th Cir. 1989). To justify recoupment in bankruptcy, "both debts must arise
> out of a single integrated transaction so that it would be inequitable for the
> debtor to enjoy the benefits of that transaction without also meeting its
> obligations." *In re University Medical Ctr.,* 973 F.2d 1065, 1081 (3d Cir.
> 1992).

*U.S. on Behalf of U.S. Postal Service v. Dewey Freight System, Inc.*, 31 F.3d 620, 623 (8th

Cir. 1994) *some citations omitted and emphasis added*. Thus, for recoupment to apply, the

obligations must arise from the same transaction.

In the bankruptcy context, recoupment is distinguished from another equitable

doctrine, referred to as "set off" (or sometime as "off set").[1] Set off is permitted, though

limited, by the Bankruptcy Code. 11 U.S.C. § 553. For example, a pre-petition claim

against the debtor cannot be setoff against post-petition debts to the debtor. *Id.*

> Recoupment, on the other hand, allows the creditor to assert that certain
> mutual claims extinguish one another in bankruptcy, in spite of the fact that
> they could not be "setoff" under 11 U.S.C. § 553. The justification for the
> recoupment doctrine is that where the creditor's claim against the debtor
> arises from the same transaction as the debtor's claim, it is essentially a
> defense to the debtor's claim against the creditor rather than a mutual
> obligation, and application of the limitations on setoff in bankruptcy would be
> inequitable.

*Lee v. Schweiker* , 739 F.2d 870, 875 (3rd Cir. 1984).

---

[1] The United States Supreme Court has explained, "'The right of setoff (also called
"offset") allows entities that owe each other money to apply their mutual debts against each
other, thereby avoiding "the absurdity of making A pay B when B owes A.' Although no
federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that,
with certain exceptions, whatever right of setoff otherwise exists is preserved in
bankruptcy." *Citizens Bank of Maryland v. Strumpf* , 516 U.S. 16, 18 (1995)(quoting
*Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313
(1913)).

Whether a particular set of facts arises from the same transaction is viewed differently by the Courts of Appeals.  For example, the Ninth Circuit has adopted a more expansive interpretation of the same transaction requirement that seeks a "logical relationship" between the debts.  *See In re TLC Hospitals, Inc.*  224 F.3d 1008, 1012 (9th Cir. 2000)(quoting *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1403 (9th Cir. 1996)(stating that "a 'transaction' may include 'a series of many occurrences,' depending not so much upon the immediateness of their connection as upon their logical relationship.")  On the other hand, the Second and Third Circuit Courts have used a more narrow interpretation of the "same transaction requirement," considering whether the facts arise from a "single integrated transaction" such that it would be  inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.  *See University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065, 1080-81 (3rd Cir. 1992) (withholding of Medicare payments in one year to adjust for overpayments in another year was not the "same transaction"); and *Malinowski v. N.Y. State Dept. of Labor (In re Malinowski),* 156 F.3d 131, 133 (2nd Cir. 1998) (holding that, in bankruptcy, "transaction" is given a more restricted definition than in the context of compulsory counterclaims under the rules of civil procedure).  The Third Circuit Court explained that "a mere logical relationship," i.e., involving "the same two parties ... and a similar subject matter," "is not enough" to warrant recoupment in the bankruptcy context. Id. at 1081. Because the Eighth Circuit Court has relied on the *Sullivan* case, the more restrictive test for the  "same transaction" will control.

The NWD-DOL argues that McClinton had no property right in the unemployment benefits paid to her pursuant to the federal and state statutory scheme, under what it

characterizes as a societal or quasi contract. The NWD-DOL argues that "[a]ny disbursement from a new claim for Nebraska unemployment benefits is inexorably tied to repayment of prior overpayments." (Filing No. 8, p. 9-10). In support of this argument, the NWD-DOL cites to the Nebraska Employment Security Law, which clearly empowers the State to recover overpayments that it made because of the recipient's willful conduct. See Neb. Rev. Stats. § 48-601 to 671 (Reissue 2004 and Cumm. Supp. 2006).

Generally described, the Nebraska Employment Security Law requires employers to pay a tax, which is also referred to as a contribution, pursuant to state and federal statutes. The taxes are dedicated to a fund from which a unemployment benefits are paid. Neb. Rev. Stat. § 48-648. The Nebraska law requires recipients to repay overpayments under certain circumstances or risk denial of future benefits. *See* Neb. Rev. Stat. § 48-628(13) describing the repayment requirement; § 48-663.01 referring to a willfulness requirement; and § 48-665(2) requiring repayment if recipient is at fault by "offset" but not if it is against "equity and good conscience." The NWD-DOL contends that its right to recoupment of overpayments is a common law right that has been codified in Nebraska law, and it is not pre-empted by the Bankruptcy Code.

The Court agrees that the Nebraska statutes contemplate the repayment of overpayments,[2] but not in the blanket manner that the NWD-DOL suggests is appropriate in this case. To justify recoupment in bankruptcy, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *University Medical Center v. Sullivan,*

---

[2] Neb. Rev. Stat. §§ 48-628(13), 48-663.01 (willfulness requirement) and 48-665(2) offset, faultless exempt from repayment, and limitations period of within three years

6

973 F2d 1065, 1081 (3rd Cir. 1992). In its decision, the bankruptcy court relied on a case from the United States Court of Appeals for the Second Circuit, *In re Malinowski*, in concluding that the payment of unemployment benefits pre-petition and post-petition to McClinton did not constitute a single transaction. (Filing No. 2, attachment 2). *In re Malinowski,* 156 F.3d 131 (2nd Cir. 1998). I agree.

Eighth Circuit Judge John R. Gibson, sitting by designation and writing for the Second Circuit Court in *Malinowski,* described circumstances that would exclude treatment of certain facts as arising from a single transaction:

> When the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts, they are not part of the same transaction.

*In re Malinowski*, 156 F.3d at 134. The Second Circuit Court held that recoupment was not permissible under the facts of *Malinowski*, explaining:

> We simply cannot stretch the requirement of a single transaction, which is central to recoupment, to a lifetime government insurance scheme, which in practical application must be based upon eligibility created by a specific period of employment.

*Id.*at 135.

The Court finds that McClinton's circumstances are very similar to the *Malinowski* case in that McClinton received unemployment benefits before she filed her petition in bankruptcy, and then again, after the discharge was entered. Like Malinowski, McClinton received an overpayment before the filing of the petition. Like Malinkowski, McClinton was not accused of willful wrongdoing. Like Malinowski, McClinton was required to be gainfully employed at some time between those two benefit periods and to make separate applications for the benefits. Because the unemployment system in Nebraska requires the

person applying for unemployment benefits satisfy independent eligibility requirements for each period for which unemployment benefits are sought, the Court concludes that the payment of unemployment benefits to McClinton, separated in time by the filing of the petition under Chapter 7 and the discharge injunction, do not constitute a single transaction that would justify recoupment. The unemployment benefits that are the subject of this case are not paid out in a continuing stream, nor are estimated benefits paid out in advance of the service, distinguishing unemployment benefits from the characterization of Medicare benefits described in *In re Slater Health Center, Inc.*, 398 F.3d 98, (1st Cir. 2005). While the recipient and the payer are the same with regard to the pre-petition and post-petition payments to McClinton, separate and distinct facts support each period of unemployment benefit payments.

Nevertheless, the NWD-DOL argues that the equities favor the treatment of the unemployment benefits payments as a single transaction. The NWD-DOL asks the Court to consider the nature of the fund from which unemployment benefits are paid and to consider the nature of McClinton's conduct relative to the overpayment. The NWD-DOL notes that the nature of the fund from which unemployment benefits are paid must be distinguished, for example, from social security payments. In so arguing, the NWD-DOL attempts to distinguish this case from *Schweiker*. In *Schweiker*, the Third Circuit Court held that the Social Security Administration could not reduce the amount paid as social security payments post-petition to recoup a pre-petition overpayment, reasoning in part that the social security payments constitute a social welfare entitlement rather than a contractual obligation. Because unemployment benefits are paid from a fund comprised solely of employer-paid taxes and to which employees do not contribute, the NWD-DOL

8

contends that the payment of unemployment benefits are made pursuant to a societal or quasi- contract and never become assets of the estate. The NWD-DOL urges the Court to reject *Malinowski* in favor of the reasoning expressed in *In re Ross,* 104 B.R. 171 (E.D. Mo. 1989) and *In re Maine*, 32 B.R. 452 (Bankr. W.D.N.Y. 1983).[3]

The issue presented in *Ross* is similar to the issue presented by McClinton. Ross, through her own fraudulent conduct, collected more than $1,500 in unemployment benefits to which she was not entitled. Ross subsequently filed a petition in bankruptcy. When she attempted to obtain additional unemployment benefits after the petition was filed, the Missouri Department of Employment Security recouped the $1,500 fraudulently-obtained overpayment from post-petition unemployment benefits. The *Ross* Court distinguished Ross's case from other cases, like *Schweiker*, that involved welfare benefits. *Ross* found it material that unemployment benefits were paid from a fund that was not the product of an employee's labor nor an employee's individual contribution. The *Ross* court reasoned that the debtor should not be able to use the Bankruptcy Code to avoid pre-petition obligations to this employer-paid fund which she had defrauded.

While it is true that employees do not contribute money to the fund from which unemployment benefits are paid, in order to be eligible for benefits paid from the fund, an employee must have been employed for a certain length of time and must have become unemployed through no fault of the employee. In that way, McClinton's eligibility for the payments was the product of her labor. The Court is not persuaded by the argument that the pre-petition unemployment benefits were not part of the debtor's estate or that they

---

[3] Other courts have followed this line, including *In re Adamic*, 291 B.R.175 (Bankr. D. Colo. 2003) and *In Re Gaither*, 200 B.R. 847 (Bankr. S.D. Ohio 1996).

should be viewed as quasi-contractual.  Specifically, the Court is not persuaded that the unique mechanism for funding the unemployment compensation system provides an equitable basis for permitting recoupment.

Another consideration that the NWD-DOL believes supports its view of a single transaction is the nature of McClinton's conduct relative to the overpayment.  The NWD-DOL argues that recoupment is appropriate in this case because McClinton's fault caused the overpayment of benefits.  There appears to be no dispute that McClinton received a greater unemployment benefit than she was entitled to receive in 2004 because she erroneously reported her income in one month in 2004.  The NWD-DOL likens McClinton's fault to the willful and fraudulent misrepresentations attributed to the debtors in *In re Maine,* 32 B.R. 452 (Bankr.W.D.N.Y. 1983)(unemployment compensation obtained prior to the debtor's bankruptcy through willful misrepresentations) and in *In re Ross*, 104 B.R. 171, 172 (E.D.Mo. 1989) (finding "Ross had fraudulently obtained $1,500 in benefits").  In those cases, courts have permitted recoupment noting in part that the debtor's own fraudulent or willful misrepresentations caused the overpayments.  The Nebraska Employment Security Law permits repayment when the debtor willfully misreports.  The law also carves out an exception, however, noting that repayment of an overpayment may not be required where equity and good conscience do not require it.  *See* Neb. Rev. Stats. §§48-663.01 and 48-665(2).

In this case there is no administrative or judicial finding that McClinton acted fraudulently or willfully.  In fact, there was no determination by the NWD-DOL that she willfully misrepresented information in 2004 or that she acted fraudulently. The NWD-DOL issued a "Notice of Adjudicator's Overpayment Determination" to McClinton stating only

that she had mis-reported her earnings for the week of September 18, 2004.  (BK Filing No. 19, Ex. 1).  In the absence of a record establishing the character of her mis-reporting as anything but innocent or inadvertent, the Court will not impose a suspect motive on her actions.  Thus, the NWD-DOL's emphasis on McClinton's faulty reporting does not further its position.

I will affirm the bankruptcy court's decision to reopen the bankruptcy case over the NWD-DOL's objection.  I conclude that the NWD-DOL likely will not be entitled to recoupment under the facts of this case.  The NWD-DOL has failed to persuade the Court that unemployment benefits paid to McClinton in 2004 and again in 2006 represent a single transaction because the federal and state system for obtaining unemployment benefits treats each period of unemployment separately for eligibility purposes and because McClinton did not act wilfully or fraudulently in obtaining the overpayment.  Accordingly,

IT IS ORDERED:

1.      The NWD-DOL's appeal is denied;

2.      The decision of the United States Bankruptcy Court is affirmed in its entirety; and

3.      The case is remanded to the United States Bankruptcy Court for further proceedings consistent with this decision.


DATED this 15th day of May, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge


11